[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14086
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20795-UU-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TRAVIS ETIENNE,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 3, 2013)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Travis Etienne appeals his conviction and sentence after pleading guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

## I.  BACKGROUND

In November 2011, a federal grand jury returned an indictment charging Etienne with possessing and intending to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 1); possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 2); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3).  Later, in February 2012, Etienne entered into a written plea agreement with the government by which he agreed to plead guilty to Count 2 in exchange for the government agreeing to dismiss Counts 1 and 3 after sentencing.  However, the government's end of the bargain was expressly conditioned on Etienne being "found [at sentencing] to have three prior convictions for violent felonies or serious drug offenses," such that he would be subject to the Armed Career Criminal Act (ACCA) sentence enhancement, 18 U.S.C. § 924(e)(1).

The plea agreement also set out that Etienne had three prior Florida felony drug convictions that occurred on occasions separate from each other, and acknowledged that Count 2 carried a statutory maximum term of imprisonment of

2

ten years.  However, the plea agreement expressly advised that if Etienne was "found to have three prior convictions for . . . serious drug offenses" he faced a "mandatory minimum term of imprisonment of 15 years" and a maximum term of life.  Finally, the plea agreement contained an appeal waiver waiving "all rights . . . to appeal any sentence imposed[] as to Count 2," unless:

> 1) the sentence exceeds the maximum permitted by statute; (2) the sentence is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing; or (3) the defendant is not found to have three prior convictions for violent felonies or serious drug offenses, pursuant to Title 18, United States Code, Section 924(e)(1), and as a result [the government] does not dismiss Counts 1 and 3 of the Indictment after sentencing.[1]

One week before he signed the plea agreement, Etienne sent a letter to the district court stating that he did not trust his lawyer.  At Etienne's change-of-plea hearing, the district court inquired about this letter, asking if Etienne still distrusted his lawyer.  Etienne responded, "No.  It was just a little miscommunication between me and him," and agreed that he was otherwise "satisfied with [his lawyer's] services."  Then, after being sworn in, Etienne indicated that he was competent; that he was "fully satisfied with the counsel, representation and advice" that he received from his lawyer about his case; and that he understood the terms of the plea agreement—including the conditional dismissal of Counts 1 and 3—and

---

[1] The agreement also stated that Etienne was released from the waiver if the government appealed his sentence.

the appeal waiver, as well as the rights he was giving up by entering into the agreement. The district court then accepted Etienne's plea to Count 2.

After he entered his guilty plea, Etienne sent a second letter to the district court stating that he was "not comfortable with [his] attorney," and that he "wish[ed] to have another one appointed." The district court construed this letter as a "Motion/Letter Requesting New Counsel" and granted the motion as construed. Later, Etienne sent a third letter to the district court, this one stating that his original attorney "lied to [him] and pressure[d him in]to signing the plea," and arguing that the district court should have interpreted his second letter as an attempt to withdraw his plea because "anyone that sign[s] a plea an[d] is not satisfied with the plea [has] 10 day[s] to withdraw." The district court construed this letter as a pro se "Motion to Vacate Plea" and struck it from the record because Etienne was represented by counsel and therefore not entitled to submit pro se filings. See Cross v. United States, 893 F.2d 1287, 1291–92 (11th Cir. 1990) ("[A]n individual does not have a right to hybrid representation.").

Etienne's new attorney then filed a formal motion to withdraw Etienne's plea on the grounds that "[Etienne] did not have sufficient time to review the discovery in this matter and . . . his [original] lawyer lied to him and pressured him

4

into signing the plea agreement."[2]  The district court denied this motion because Etienne did not "elaborate as to what he failed to understand regarding the plea agreement," and his "conclusory allegations [were] insufficient to overcome the strong presumption that the statements he made during the plea colloquy [were] true" regarding his satisfaction with his counsel, his accurate understanding of the plea agreement, and his knowing and voluntary entry into the agreement.

After the district court denied Etienne's motion to withdraw, the Probation Office prepared a Presentence Investigation Report (PSI) recommending that the three Florida drug convictions specified in Etienne's plea agreement qualified him as an armed career criminal under 18 U.S.C. 924(e).  With this being the case, the PSI called for a United States Sentencing Guidelines range of 262 to 327 months imprisonment, based on a total offense level of 34 and a criminal history category of VI.  Applying the ACCA enhancement, §§ 922(g)(1) and 924(e)(1), the PSI also indicated that Etienne faced a statutory minimum term of fifteen years imprisonment, and a maximum term of life.

Over Etienne's various objections, the district court adopted the recommendations in the PSI and sentenced Etienne to a low-end guideline sentence of 262 months imprisonment.  This appeal followed.

---

[2]  After his attorney filed this motion, Etienne filed another pro se "Motion to Withdraw Guilty Plea," which the district court struck as duplicative.

5

## II. DISCUSSION

Etienne argues on appeal that the district court erred when it refused his request to withdraw his guilty plea. He also suggests that the district court erred in failing to conduct an evidentiary hearing before denying his motion to withdraw.[3]

We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006). In reviewing a district court's denial of such a motion, we will reverse only if the district court's "ultimate conclusion is arbitrary or unreasonable." United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir. 2003) (quotation marks omitted).

---

[3] The other issues raised in Etienne's appeal are either abandoned or waived. Specifically, his claim that "it is a violation of the equal protection clause . . . for the sentencing guidelines to take into account . . . criminal conviction[s] obtained by [Etienne] when he was only . . . sixteen" is abandoned because other than to state that "there is no rational basis" for Florida to designate certain felony drug offenses as adult convictions when the defendants are underage, Etienne has not briefed the issue of how Florida's treatment of underage offenders fails the rational basis test. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that arguments "not fully briefed . . . to the Circuit Court" are deemed abandoned); cf. United States v. Campos-Diaz, 472 F.3d 1278, 1279–80 (11th Cir. 2006) (applying rational basis review to "determine[] whether a judicial district's lack of participation in the fast-track [sentencing] program creates a distinction that rises to the level of an equal protection violation" because "the distinction between defendants sentenced in fast-track districts and defendants sentenced in other districts [does not] involve[] a suspect classification or infringe[] on a fundamental right"). Etienne's argument that his 262-month guideline sentence "constitutes cruel and unusual punishment" in violation of the Eighth Amendment because it is based on an ACCA enhancement predicated on "thirteen and fourteen year old convictions" is waived by operation of the appeal waiver in Etienne's plea agreement. See United States v. Bascomb, 451 F.3d 1292, 1297 (11th Cir. 2006) (holding that "a defendant may . . . knowingly and voluntarily waive his right to appeal a sentence on the ground that its length, which is less than the statutory maximum, renders it cruel and unusual"). Last, Etienne has abandoned any argument that his appeal waiver should not be enforced by failing to brief the issue. Access Now, Inc., 385 F.3d at 1330.

Federal Rule of Criminal Procedure 11(d) provides that after the district court has accepted a defendant's guilty plea, and before sentencing, a defendant may withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether a defendant has met his burden to show a "fair and just reason," a district court "consider[s] the totality of the circumstances surrounding the plea," including whether: (1) "close assistance of counsel was available," (2) "the plea was knowing and voluntary," (3) "judicial resources would be conserved," and (4) "the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1988) (quotation marks omitted).

"The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are issues for the trial court to decide." Brehm, 442 F.3d at 1298 (quotation marks and alterations omitted). Additionally, there is a "strong presumption" that statements made by a defendant during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). As a result of this presumption, a defendant bears a heavy burden to show that his statements under oath were false. United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Finally, where the colloquy at the plea hearing sufficiently probed whether the guilty plea was knowing and voluntary, a district court does

7

not abuse its discretion by declining to hold an evidentiary hearing on the motion to withdraw. See United States v. Stitzer, 785 F.2d 1506, 1514 (11th Cir. 1986).

Etienne argues to us that because he "repeatedly complained about a lack of information and accused his counsel of blatantly lying to him," the district court necessarily abused its discretion when it denied his motion to withdraw his plea based, in part, on its determination that he was afforded the close assistance of counsel. He further contends that the district court abused its discretion in failing to discuss each of the four Buckles factors in its denial of his motion.

We are not persuaded by Etienne's argument. The same as in his original motion to withdraw, Etienne's appellate brief does not elaborate on which terms in the plea agreement he did not understand, or what it was that his attorney lied to him about. Instead, Etienne contends merely that because his lawyer "lied to him," and the district court knew as of April 22 that "he wanted to withdraw his plea," "it is clear that there was no close assistance of counsel afforded." This is simply not enough to overcome his statements to the district court that any lingering issues with his lawyer had been resolved; that he was "fully satisfied with the counsel, representation, and advice" that he had received; and that he had discussed his plea agreement with his lawyer and understood "each and every term." See Rogers, 848 F.2d at 168; Medlock, 12 F.3d at 187. Neither are his general assertions enough to undermine our confidence that he entered into the plea agreement freely,

8

that he understood the nature of the charge against him, and that he appreciated the potential penalties he faced and the rights he was giving up by pleading guilty.  See United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000) ("When accepting a guilty plea, a court must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." (quotation marks omitted)).

In sum, this record reveals no abuse of discretion by the district court in denying Etienne's motion to withdraw his guilty plea.  See Brehm, 442 F.3d at 1298; Buckles, 843 F.2d at 471.  Neither did the district court abuse its discretion in failing to discuss the remaining factors listed in Buckles—specifically, whether judicial resources would be conserved or whether the government would be prejudiced if Etienne were allowed to withdraw his plea.  Buckles, 843 F.2d at 472.  This is because where, as here, Etienne failed to satisfy the first two factors of the Buckles analysis, a court need not "give particular attention" to the other factors.  See United States v. Gonzalez–Mercado, 808 F.2d 796, 801 (11th Cir. 1987).  Finally, the district court did not abuse its discretion in declining to hold an evidentiary hearing on Etienne's motion because, for reasons explained, the colloquy at the plea hearing sufficiently probed whether Etienne was knowingly and voluntarily pleading guilty.  See Stitzer, 785 F.2d at 1514.

9

## III. CONCLUSION

For these reasons, Etienne's conviction and sentence are

**AFFIRMED.**